Presented to the Court by the foreman of the Grand Jury in open Court, in the presence of the Grand Jury and FILED in the U.S. DISTRICT COURT at Seattle, Washington.

JANUARY 26, 2011
WILLIAM M. McCOOL, Clerk
By _____ Deputy

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,   )   No. CR11 0027 RAJ
            Plaintiff,      )
                            )   **INDICTMENT**
    v.                      )
                            )
OVIDIU MATEESCU, a/k/a Paul Lano, )
David Loid, Mark Loys, Gvidiv Mateescu, )
Mihai Podaru, Alberto Reto, Antonio Rina, )
David Rost, Miguel Santo, and Mario Vega; )
and CLAUDIU TUDOR,          )
                            )
            Defendants.     )

The Grand Jury charges that:

### COUNTS ONE THROUGH FOUR
### (Bank Fraud)

**A.   The Scheme and Artifice to Defraud**

1.     Beginning at a time unknown, but no later than September 2010, and continuing through on or about November 6, 2010, within the Western District of Washington and elsewhere, OVIDIU MATEESCU, a/k/a Paul Lano, David Loid, Mark Loys, Gvidiv Mateescu, Mihai Podaru, Alberto Reto, Antonio Rina, David Rost, Miguel Santo, and Mario Vega; and CLAUDIU TUDOR; and others known and unknown to the Grand Jury, knowingly devised and executed a scheme and artifice to defraud various financial institutions, including, but not limited, Bank of America, Boeing Employees' Credit Union ("BECU"), JPMorgan Chase Bank

INDICTMENT/Mateescu et al. - 1

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1. ("Chase Bank"), US Bank, and Wells Fargo Bank, all financial institutions as defined by Title 18, United States Code, Section 20, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, and credits under the custody and control of said financial institutions by means of materially false and fraudulent pretenses, representations, and promises, as further and more particularly set forth below.

2. The object of the scheme and artifice to defraud was to obtain cash and funds fraudulently by secretly obtaining personal identifying and financial information, including, but not limited to, bank and credit union account data and personal identification numbers ("PINs"), of actual customers of financial institutions from various locations and through various means. The object of the scheme and artifice to defraud was then to use the secretly obtained personal identifying and financial information to produce counterfeit bank cards and to impersonate actual customers of the aforementioned financial institutions to unlawfully access and withdraw money and funds from customers' accounts, without permission or legal authorization, to purchase goods and services from merchants and to obtain cash and funds under the custody and control of said financial institutions.

**B.     Manner and Means of the Scheme and Artifice to Defraud**

3. It was part of the scheme and artifice to defraud that beginning at a time unknown, but no later than September 2010, and continuing through on or about November 6, 2010, OVIDIU MATEESCU and CLAUDIU TUDOR, and others known and unknown, manufactured and obtained fabricated materials designed to fit discretely onto the face plates of Automated Teller Machines ("ATMs") or on ATM vestibules that contained an electronic card reader. These "skimmers" or "skimming devices" stored the information, or track data, encoded on the magnetic strip on any bank, credit, debit, or other card passing through the device. OVIDIU MATEESCU and CLAUDIU TUDOR, and others known and unknown, also manufactured and obtained fabricated materials designed to fit discretely onto ATMs that contained a small camera, also known as a "pin-hole" camera.

4. It was further part of the scheme and artifice to defraud that OVIDIU MATEESCU and CLAUDIU TUDOR, and others known and unknown, affixed a skimming

device and a pin-hole camera to various ATM machines, owned and operated by financial institutions, with the intent to surreptitiously obtain, without permission or legal authorization, personal and financial information, including, but not limited to, the bank and credit union account data and PINs of individuals inserting bank, credit, and debit cards into the ATM machines to conduct otherwise legitimate transactions.

5. It was further part of the scheme and artifice to defraud that OVIDIU MATEESCU and CLAUDIU TUDOR, and others known and unknown, later retrieved the skimming devices and the pin-hole cameras previously affixed to ATM machines, which contained the personal and financial information of individuals who had used the ATM machines while these devices were affixed thereto.

6. It was further part of the scheme and artifice to defraud that OVIDIU MATEESCU and CLAUDIU TUDOR, and others known and unknown, transferred the personal and financial information contained on the skimming devices and on the pin-hole cameras onto computers and other electronic devices, and synchronized the data from the separate devices, so as to match the encoded bank and credit union account information, obtained from the skimming devices, with the corresponding PIN data, obtained from the pin-hole cameras.

7. It was further part of the scheme and artifice to defraud that OVIDIU MATEESCU and CLAUDIU TUDOR, and others known and unknown, obtained alternative access devices, namely, plastic cards containing magnetic strips, also known as "white plastic," to serve as raw stock for the purpose of electronically recording onto such cards the personal and financial information obtained through the aforementioned skimming activity on ATM machines for the purpose of making counterfeit access devices. The alternative access devices used included blank cards, gift cards, phone cards, and other bank and debit cards that had their magnetic strips wiped of encoded information.

8. It was further part of the scheme and artifice to defraud that OVIDIU MATEESCU and CLAUDIU TUDOR, and others known and unknown, using computers, encoding software, encoders, and other electronic devices, transferred and "re-encoded" the

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  personal and financial information obtained through the aforementioned skimming activity on
2  ATM machines onto the alternative card stock, thus creating counterfeit cards.

3      9.      It was further part of the scheme and artifice to defraud that OVIDIU
4  MATEESCU and CLAUDIU TUDOR, and others known and unknown, used the newly made
5  counterfeit cards and the corresponding PINs to access individuals' bank and credit union
6  account information at ATM machines and to withdraw funds from said bank and credit union
7  accounts, to obtain cash and funds under the custody and control of federally insured financial
8  institutions, and to purchase consumer goods and merchandise using funds from said bank and
9  credit union accounts, all without legal authority and without the knowledge and permission of
10 the actual account holders. This conduct included, but was not limited to, the following
11 representative transactions:

12      a.      Beginning on or about September 16, 2010, and continuing until on or
13 about November 6, 2010, OVIDIU MATEESCU and CLAUDIU TUDOR used an access device,
14 including the financial information and PIN, relating to account no. xxxx-xxxx-xxxx-4987, a
15 BECU account belonging to account holder C.G., a real person, to withdraw at least five
16 thousand dollars ($5,000) from various ATM machines in Lynnwood, Federal Way, Seattle, and
17 Tukwila, Washington.

18      b.      Beginning on or about September 17, 2010, and continuing until on or
19 about November 6, 2010, OVIDIU MATEESCU and CLAUDIU TUDOR used an access device,
20 including the financial information and PIN, relating to account no. xxxx-xxxx-xxxx-6110, a
21 BECU account belonging to account holder S.S., a real person, to withdraw at least three
22 thousand dollars ($3,000) from various ATM machines in Seattle, Kirkland, and Redmond,
23 Washington.

24      c.      Beginning on or about September 17, 2010, and continuing until on or
25 about November 6, 2010, OVIDIU MATEESCU and CLAUDIU TUDOR used an access device,
26 including the financial information and PIN, relating to account no. xxxx-xxxx-xxxx-5462, a
27 BECU account belonging to account holder T.B., a real person, to withdraw at least three
28

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

thousand and five hundred dollars ($3,500) from various ATM machines in Renton, Kirkland, Redmond, Seattle, and Tukwila, Washington.

        d.      Beginning on or about September 16, 2010, and continuing until on or about November 6, 2010, OVIDIU MATEESCU and CLAUDIU TUDOR used an access device, including the financial information and PIN, relating to account no. xxxx-xxxx-xxxx-8791, a BECU account belonging to account holder W.L., a real person, to withdraw at least two thousand dollars ($2,000) from various ATM machines in Seattle and Burien, Washington.

    10.    It was further part of the scheme and artifice to defraud that OVIDIU MATEESCU and CLAUDIU TUDOR intended by their actions to defraud the financial institutions referenced herein. As part of their scheme and artifice to defraud, OVIDIU MATEESCU and CLAUDIU TUDOR secretly obtained the personal and financial information of more than fifty (50) individuals, used and attempted to use said information to access and obtain cash and funds in the custody and control of the aforementioned and other financial institutions, and have caused a total actual loss of more than one hundred and seventy thousand dollars ($170,000.00).

## C. Execution of the Scheme and Artifice to Defraud

    11.    On or about the below listed dates, at Seattle and elsewhere, within the Western District of Washington, OVIDIU MATEESCU and CLAUDIU TUDOR executed and attempted to execute this scheme and artifice to defraud by conducting and causing to be conducted the below listed transactions and activities, which are representative examples of the type of transactions conducted pursuant to this scheme and artifice to defraud, with each transaction constituting a separate count of this Indictment:

//
//
//
//
//

| COUNT | DATE | DEFENDANT | TRANSACTION |
|---|---|---|---|
| ONE | 10/10/2010 | OVIDIU MATEESCU CLAUDIU TUDOR | used an access device encoded with financial information and PIN relating to account no. xxxx-xxxx-xxxx-4987, a BECU account belonging to account holder C.G., a real person, to obtain $2,500 from a BECU ATM machine located in Lynnwood, Washington |
| TWO | 10/11/2010 | OVIDIU MATEESCU CLAUDIU TUDOR | used an access device encoded with financial information and PIN relating to account no. xxxx-xxxx-xxxx-6110, a BECU account belonging to account holder S.S., a real person, to obtain $1,000 from a BECU ATM machine located in Redmond, Washington |
| THREE | 10/11/2010 | OVIDIU MATEESCU CLAUDIU TUDOR | used an access device encoded with financial information and PIN relating to account no. xxxx-xxxx-xxxx-5462, a BECU account belonging to account holder T.B., a real person, to obtain $1,000 from a BECU ATM machine located in Redmond, Washington |
| FOUR | 10/12/2010 | OVIDIU MATEESCU CLAUDIU TUDOR | attempted to use an access device encoded with financial information and PIN relating to account no. xxxx-xxxx-xxxx-8791, a BECU account belonging to account holder W.L., a real person, to obtain $1,000 from an ATM machine located in Seattle, Washington |

All in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT FIVE
### (Conspiracy to Commit Access Device Fraud)

12. Paragraphs 1 through 11 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

**A. The Offense**

13. Beginning on a date unknown, but no later than in or about September 2010, and continuing until on or about November 6, 2010, within the Western District of Washington and elsewhere, OVIDIU MATEESCU and CLAUDIU TUDOR, and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate and agree together to commit the following crime: to knowingly, and with the intent to defraud, effect transactions, with one or more access devices issued to another person or persons, to receive payment and any other thing of value during any one-year period the aggregate value of which is equal to or greater than one thousand dollars ($1,000), in violation of Title 18, United States Code, Section 1029(a)(5).

**B. Object of the Conspiracy**

14. The object of the conspiracy was to obtain funds and items of value from financial institutions as well as from merchants and other retail establishments, through the unauthorized and fraudulent use of account and personal identification information of other persons and real account holders.

**C. Manner and Means of the Conspiracy**

15. Paragraphs 3 through 10 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein, and assert the manner and means of the conspiracy.

**D. Overt Acts**

16. In furtherance of the conspiracy and to accomplish the objects of the conspiracy, on or about the following dates, OVIDIU MATEESCU and CLAUDIU TUDOR, and others known and unknown, within the Western District of Washington and elsewhere, committed the following overt acts:

        a.      On or about September 16, 2010, OVIDIU MATEESCU and CLAUDIU TUDOR affixed a skimming device and a pin-hole camera to an ATM machine owned and operated by BECU in Renton, Washington, in order to surreptitiously obtain account information and PINs from customers using the ATM machine.

        b.      On or about September 17, 2010, OVIDIU MATEESCU and CLAUDIU TUDOR affixed a skimming device and a pin-hole camera to an ATM machine owned and operated by BECU in Renton, Washington, in order to surreptitiously obtain account information and PINs from customers using the ATM machine.

        c.      On or about September 19, 2010, OVIDIU MATEESCU and CLAUDIU TUDOR affixed a skimming device and a pin-hole camera to an ATM machine owned and operated by BECU in Renton, Washington, in order to surreptitiously obtain account information and PINs from customers using the ATM machine.

        d.      On or about September 21, 2010, OVIDIU MATEESCU and CLAUDIU TUDOR affixed a skimming device and a pin-hole camera to an ATM machine owned and operated by BECU in Renton, Washington, in order to surreptitiously obtain account information and PINs from customers using the ATM machine.

        e.      On or about September 23, 2010, OVIDIU MATEESCU and CLAUDIU TUDOR affixed a skimming device and a pin-hole camera to an ATM machine owned and operated by BECU in Woodinville, Washington, in order to surreptitiously obtain account information and PINs from customers using the ATM machine.

        f.      On or about November 6, 2010, OVIDIU MATEESCU and CLAUDIU TUDOR affixed a skimming device and a pin-hole camera to an ATM machine owned and operated by BECU in Puyallup, Washington, in order to surreptitiously obtain account information and PINs from customers using the ATM machine.

        g.      On or about November 6, 2010, OVIDIU MATEESCU and CLAUDIU TUDOR possessed equipment designed and primarily used for making access devices, including, but not limited to, a skimming device, a pin-hole camera, computers, and other digital devices.

h.  On various dates unknown, but no later than in or about September 2010, and before on or about November 6, 2010, OVIDIU MATEESCU, using fraudulent identification documents, opened and established accounts in his name and in the name of aliases at financial institutions, including, but not limited, Bank of America and Chase Bank.

i.  Beginning on or about September 16, 2010, and continuing until on or about November 6, 2010, OVIDIU MATEESCU and CLAUDIU TUDOR used an access device, including the financial information and PIN, relating to account no. xxxx-xxxx-xxxx-4987, a BECU account belonging to account holder C.G., a real person, to withdraw at least five thousand dollars ($5,000) from various ATM machines in Lynnwood, Federal Way, Seattle, and Tukwila, Washington.

j.  Beginning on or about September 17, 2010, and continuing until on or about November 6, 2010, OVIDIU MATEESCU and CLAUDIU TUDOR used an access device, including the financial information and PIN, relating to account no. xxxx-xxxx-xxxx-5462, a BECU account belonging to account holder T.B., a real person, to withdraw at least three thousand and five hundred dollars ($3,500) from various ATM machines in Renton, Kirkland, Redmond, Seattle, and Tukwila, Washington.

All in violation of Title 18, United States Code, Section 1029(b)(2).

## COUNTS SIX AND SEVEN
### (Possession of Device-Making Equipment)

On or about the dates specified below, at Woodinville and Renton, within the Western District of Washington and elsewhere, OVIDIU MATEESCU and CLAUDIU TUDOR knowingly, and with intent to defraud, and affecting interstate and foreign commerce, produced, trafficked in, had custody and control of, and possessed, and aided and abetted the production, trafficking in, the custody and control of, and possession of, device-making equipment, as follows:

| COUNT | DATE | DEFENDANTS | COUNTERFEIT ACCESS DEVICE |
|---|---|---|---|
| SIX | 9/23/2010 | OVIDIU MATEESCU CLAUDIU TUDOR | Possessed and had custody and control of device-making equipment, namely, a skimming device and a pin-hole camera, in Woodinville, Washington |
| SEVEN | 11/6/2010 | OVIDIU MATEESCU CLAUDIU TUDOR | Possessed and had custody and control of device-making equipment, namely, a skimming device and pin-hole camera equipment, in Renton, Washington |

All in violation of Title 18, United States Code, Sections 1029(a)(4) and 2.

## COUNT EIGHT
### (Use of Access Devices to Effect Fraudulent Transactions)

Beginning at a time unknown but no earlier than November 7, 2009, and ending on or about November 6, 2010, at Seattle and elsewhere, within the Western District of Washington, OVIDIU MATEESCU and CLAUDIU TUDOR knowingly, and with intent to defraud, and affecting interstate and foreign commerce, did effect, and aid and abet the effectuation of, transactions with access devices issued to other persons, to wit: account data and PINs relating to BECU account nos. xxxx-xxxx-xxxx-4987, xxxx-xxxx-xxxx-6110, xxxx-xxxx-xxxx-5462, and xxxx-xxxx-xxxx-8791, to receive money, payments and other things of value during a one-year period, the aggregate value of which is equal to or greater than one thousand dollars ($1,000).

All in violation of Title 18, United States Code, Sections 1029(a)(5) and 2.

## COUNT NINE
### (Aggravated Identity Theft)

On or about October 10, 2010, at Lynnwood, within the Western District of Washington, OVIDIU MATEESCU did knowingly transfer, possess and use, without lawful authority, the means of identification of another person, that is, the account number and PIN belonging to C.G., a real person, during and in relation to a felony listed in Title 18, United States Code, Section 1028A(c), that is, Bank Fraud, in violation of Title 18, United States Code, Section 1344, as alleged in Count One, above.

All in violation of Title 18, United States Code, Section 1028A(a).

## COUNT TEN
### (Aggravated Identity Theft)

On or about October 11, 2010, at Redmond, within the Western District of Washington, CLAUDIU TUDOR did knowingly transfer, possess and use, without lawful authority, the means of identification of another person, that is, the account number and PIN belonging to T.B., a real person, during and in relation to a felony listed in Title 18, United States Code, Section 1028A(c), that is, Bank Fraud, in violation of Title 18, United States Code, Section 1344, as alleged in Count Three, above.

All in violation of Title 18, United States Code, Section 1028A(a).

**ALLEGATION OF FORFEITURE**

1. The allegations contained in the above paragraphs of this Indictment are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeitures to the United States pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982, and 1029(c)(2), and Title 28, United States Code, Section 2461(c).

2. Upon conviction of any offenses charged in Counts One through Eight, above, in violation of Title 18, United States Code, Sections 1344 and 1029, OVIDIU MATEESCU and CLAUDIU TUDOR, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982, and 1029(c)(2), and Title 28, United States Code, Section 2461(c), any and all property, real or personal, that constitutes or is derived, directly or indirectly, from proceeds traceable to the offenses.

3. The property to be forfeited includes, but is not limited to the following:

   a. <u>Money Judgment</u>. A sum of money representing the proceeds obtained as a result of the offenses charged in Counts One through Eight of this Indictment.

   b. <u>Substitute Assets</u>. If any of the above-described forfeitable property, as a result of any act or omission of the Defendant

   (1) cannot be located upon the exercise of due diligence;
   (2) has been transferred or sold to, or deposited with, a third party;
   (3) has been placed beyond the jurisdiction of the Court;
   (4) has been substantially diminished in value; or
   (5) has been commingled with other property which cannot be subdivided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

//
//

INDICTMENT/Mateescu *et al.* - 12

1 | All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982, and 1029(c)(2),
2 | and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

DATED: January 26, 2011

*[Signature of Foreperson redacted pursuant to the policy of the Judicial Conference of the United States]*

_____
FOREPERSON

JENNY A. DURKAN
United States Attorney

TESSA M. GORMAN
Assistant United States Attorney

STEVEN T. MASADA
Assistant United States Attorney

INDICTMENT/Mateescu *et al.* - 13