The Honorable Richard A. Jones

____ FILED ____ ENTERED
____ LODGED ____ RECEIVED

APR 20 2011

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
            DEPUTY

11-CR-00027-ANS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR11-27 RAJ |
| Plaintiff, | **PLEA AGREEMENT** |
| v. | |
| CLAUDIU TUDOR, | |
| Defendant. | |

The United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, and Steven T. Masada, Assistant United States Attorney for said District, Defendant, Claudiu Tudor, and his attorney, Jesse Cantor, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c):

1. **The Charges.** Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters his plea of guilty to the following charges contained in the Indictment.

    a.   Bank Fraud, as charged in Count Three, in violation of Title 18, United States Code, Section 1344.

    b.   Conspiracy to Commit Access Device Fraud, as charged in Count Five, in violation of Title 18, United States Code, Section 1029(b).

PLEA AGREEMENT/TUDOR
Case No. CR11-27 RAJ - 1

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

   c. Aggravated Identity Theft, as charged in Count Ten, in violation of Title 18, United States Code, Section 1028A.

By entering these pleas of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering his pleas of guilty, he will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

  2. **Elements of the Offense.** The elements of the offenses of Bank Fraud, Conspiracy to Commit Access Device Fraud, and Aggravated Identity Theft, as charged in Counts Three, Five, and Ten, are set forth below.

   a. The elements of the offense of Bank Fraud, as charged in Count Three, in violation of Title 18, United States Code, Section 1344, are as follows:

<u>First</u>, the defendant knowingly carried out a scheme or plan to obtain money or property from a financial institution by making false statements, representations, or promises;

<u>Second</u>, the defendant knew that the statements, representations, or promises were false;

<u>Third</u>, the statements, representations, or promises were material; that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property;

<u>Fourth</u>, the defendant acted with the intent to defraud; and

<u>Fifth</u>, the financial institution was federally insured.

   b. The elements of the offense of Conspiracy to Commit Access Device Fraud, as charged in Count Five, in violation of Title 18, United States Code, Section 1029(b), are as follows:

<u>First</u>, there was an agreement between two or more persons to commit an offense against the United States, specifically, fraud in relation to an access device, in violation of Title 18, United States Code, Section 1029(a)(5);

<u>Second</u>, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and,

<u>Third</u>, that someone in the conspiracy committed an overt act in furtherance of the objectives of the conspiracy.

PLEA AGREEMENT/TUDOR
Case No. CR11-27 RAJ - 2

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

The elements of the offense of fraud in relation to an access device, in violation of Title 18, United States Code, Section 1029(a)(5), are as follows:

<u>First</u>, with access devices issued to other persons, the defendant knowingly effected transactions;

<u>Second</u>, the defendant obtained through such transactions at any time during a one-year period, a total of at least $1,000 in payments or any other things of value;

<u>Third</u>, the defendant acted with intent to defraud; and

<u>Fourth</u>, the defendant's conduct in some way affected commerce between one state and another state, or between a state of the United States and a foreign country.

    c.    The elements of the offense of Aggravated Identity Theft, as charged in Count Ten, in violation of Title 18, United States Code, Section 1028A, are as follows:

<u>First</u>, the defendant knowingly transferred, possessed, or used, without legal authority, a means of identification of another person;

<u>Second</u>, the defendant knew that the means of identification belonged to a real person; and

<u>Third</u>, the defendant did so during and in relation to the commission of a felony violation enumerated in subsection (c) of Title 18, United States Code, Section 1028A, namely, Bank Fraud, in violation of Title 18, United States Code, Section 1344.

3.    **The Penalties.** Defendant understands that the statutory penalties for the offenses of Bank Fraud, Conspiracy to Commit Access Device Fraud, and Aggravated Identity Theft, as charged in Counts Three, Five, and Ten, are as follows:

    a.    <u>Count Three (Bank Fraud)</u>: Imprisonment for up to thirty (30) years, a fine of up to one million dollars ($1,000,000.00), a period of supervision following release from prison of up to five (5) years, and a special assessment of one hundred dollars ($100.00).

    b.    <u>Count Five (Conspiracy to Commit Access Device Fraud)</u>: Imprisonment for up to seven-and-one-half (7.5) years, a fine of up to two hundred and fifty thousand dollars ($250,000.00), a period of supervision following release from prison of up to three (3) years, and a special assessment of one hundred dollars ($100.00).

    c.    <u>Count Ten (Aggravated Identity Theft)</u>: Imprisonment for two (2) years, which shall run consecutively to any other term of imprisonment imposed, a fine of up to two hundred and fifty

PLEA AGREEMENT/TUDOR
Case No. CR11-27 RAJ - 3

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

thousand dollars ($250,000.00), a period of supervision following release from prison of up to one (1) year, and a special assessment of one hundred dollars ($100.00).

If Defendant receives a sentence of probation, the probationary period could be up to five (5) years. Defendant agrees that the special assessment shall be paid at or before the time of sentencing.

Defendant understands that supervised release is a period of time following imprisonment during which he will be subject to certain restrictions and requirements. Defendant further understands that if supervised release is imposed and he violates one or more of its conditions, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant's serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that in addition to any term of imprisonment and/or fine that is imposed, the Court may order him to pay restitution to any victim of the offense, as required by law. Defendant further understands that a consequence of pleading guilty may include the forfeiture of certain property either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

4.   **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, he knowingly and voluntarily waives the following rights:

    a.   The right to plead not guilty and to persist in a plea of not guilty;

    b.   The right to a speedy and public trial before a jury of his peers;

    c.   The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for him;

    d.   The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

    e.   The right to confront and cross-examine witnesses against Defendant at trial;

    f.   The right to compel or subpoena witnesses to appear on his behalf at trial;

PLEA AGREEMENT/TUDOR
Case No. CR11-27 RAJ - 4

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

h. The right to appeal a finding of guilt or any pretrial rulings.

5. **United States Sentencing Guidelines.** Defendant understands and acknowledges that, at sentencing, the Court must consider the sentencing range calculated under the United States Sentencing Guidelines, together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offenses; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

a. The Court will determine his applicable Sentencing Guidelines range at the time of sentencing;

b. After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. § 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c. The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d. Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

6. **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

PLEA AGREEMENT/TUDOR
Case No. CR11-27 RAJ - 5

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

7. **Sentencing Factors.** The parties agree that the following Sentencing Guidelines provisions apply to this case:

    a.    A base offense level of 7, pursuant to USSG § 2B1.1(a);

    b.    A 12-point offense level enhancement, pursuant to USSG § 2B1.1(b)(1), because the offense involved a loss of more than $200,000;

    c.    A 4-point offense level enhancement, pursuant to USSG § 2B1.1(b)(2), because the offense involved 50 or more victims;

    d.    An offense level reduction, pursuant to USSG § 3E1.1, in accordance with the paragraph entitled "Acceptance of Responsibility," below.

The parties agree they are free to argue the application of any other provisions of the United States Sentencing Guidelines. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

8. **Loss Amount.** For purposes of determining the appropriate sentence, the United States and Defendant agree that the amount of the loss is more than two hundred thousand dollars ($200,000.00), but less than four hundred thousand dollars ($400,000.00).

9. **Restitution.** Defendant agrees to make full restitution to financial institutions, Boeing Employee's Credit Union, Wells Fargo, Key Bank, and Union Bank, as well as other victims of the overall conspiracy and scheme to defraud. Defendant acknowledges and agrees that this restitution amount exceeds two hundred and thirty thousand six hundred twenty-five dollars and thirty-five cents ($230,625.35), with credit for any amounts already paid. Defendant further agrees to include in the restitution amount, victims and loss associated with the scheme to defraud, to include any skimming activity or unauthorized withdrawals or purchases, that are discovered or otherwise identified by the parties subsequent to this plea agreement and before sentencing. Said amount shall be due and payable immediately and shall be paid in accordance with a schedule of payments as proposed by the United States Probation Office and ordered by the Court. Defendant understands that the Court might order additional restitution at the time of sentencing, including any amounts expended by the victims of identity theft.

PLEA AGREEMENT/TUDOR
Case No. CR11-27 RAJ - 6

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

10. **Sentencing Recommendation.** The parties, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), agree and jointly stipulate that a sentencing range of 57 to 65 months' incarceration is appropriate in this case. The parties further agree to recommend a sentence within the aforementioned stipulated sentencing range. Both parties are free to present arguments regarding other aspects of the Defendant's sentence, including the term of supervised release, fines, and restitution. Defendant understands that neither the Court nor the Probation Office are bound to follow the parties' recommendations regarding sentencing, and that the Court is free to impose any sentence up to and including the statutory maximum.

11. **Forfeiture of Contraband.** Defendant also agrees that if any firearms or illegal contraband were seized by any law enforcement agency from the possession of Defendant, or that were in the direct or indirect control of Defendant, then Defendant consents to the administrative forfeiture, official use, and/or destruction of said firearms or contraband by any law enforcement agency involved in the seizure of these items.

12. **Forfeiture.** Defendant agrees to forfeit to the United States immediately all of Defendant's right, title, and interest in any and all property, real or personal, that constitutes, or was derived from, any proceeds Defendant obtained, directly or indirectly, as the result of such offenses, that are subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982, and 1029(c)(2), and Title 28, United States Code, Section 2461(c), including the following assets:

    a. a Toshiba laptop computer with serial number Z9169278Q,
    b. a Toshiba laptop computer with serial number Z9025858Q,
    c. a Dell Inspiron 1100 laptop computer with service tag number C1KVQ31,
    d. a Nokia cell phone IMEI 011974004837772,
    e. a Nokia cell phone IMEI 011974005550440,
    f. a Nokia cell phone IMEI 359330020649453,
    g. a Nokia cell phone IMEI 011974008679956,
    h. a Nokia cell phone IMEI 011974005543536,
    i. a Samsung Galaxy cell phone with serial number R3YZ83386OK,
    j. a Samsung cell phone serial number RPXZ745384N,

PLEA AGREEMENT/TUDOR
Case No. CR11-27 RAJ - 7

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1       k.     an Apple iPhone IC number 579CE2380A,

2       l.     a Samsung AT&T cell phone with serial number RPASA99668R,

3       m.     Iomega external hard drive with serial number WZAA155300,

4       n.     Virgin Wireless USB devices, ESN 09115798467 and 09101893762,

5       o.     a green card reader (skimmer), and other tools and/or supplies used to manufacture and install skimming devices,

7       p.     seized jewelry items, including three rings and a Movado watch, and

8       q.     seized currency, including $1,145.28 in cash seized incident to arrest.

Defendant agrees to fully assist the United States in the forfeiture of the listed assets and to take whatever steps are necessary to pass clear title to the United States, including but not limited to: surrendering title and executing any documents necessary to effectuate such forfeiture; assisting in bringing any assets located outside the United States within the jurisdiction of the United States; and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture. Defendant agrees not to file a claim to any of the listed property in any civil forfeiture proceeding, administrative or judicial, which may be initiated.

Defendant further agrees to provide a truthful proffer or statement regarding all of Defendant's assets and to make a full and complete disclosure of all assets in which Defendant has any interest or over which Defendant exercises control and those which are held or controlled by a nominee(s). Defendant further agrees to submit to a polygraph examination on the issue of assets if it is deemed necessary by the United States.

The United States reserves its right to proceed against any remaining assets not identified in this Plea Agreement.

13. **Statement of Facts.** The parties agree on the following facts. Defendant admits he is guilty of the charged offenses.

    a.     Dating back to a date unknown but no later than July 2010 and continuing until November 6, 2010, within the Western District of Washington, CLAUDIU TUDOR knowingly and voluntarily conspired with others and participated in a scheme and artifice to defraud that involved skimming activity targeting automated teller machines ("ATMs"). Generally speaking, the object of the conspiracy and the scheme was to fraudulently access cash and funds in the custody of federally insured

PLEA AGREEMENT/TUDOR
Case No. CR11-27 RAJ - 8

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

financial institutions, as defined by Title 18, United States Code, Section 20, using stolen personal identifying and financial information, namely, the account data and personal identification numbers ("PINs"), of actual customers of financial institutions. These account numbers and PINs are access devices, as defined by Title 18, United States Code, Section 1029.

      b.     As part of the scheme, TUDOR, with others, placed skimming devices—i.e., electronic card readers that read and store track data encoded on the magnetic strip of cards passing through the devices—and pin-hole cameras on various ATMs, including, but not limited to, the following:

| Date | Financial Institution | ATM Location |
|---|---|---|
| July 24, 2010 | Key Bank | 9735 Holman Rd. NW, Seattle, Washington |
| July 25, 2010<br>Aug. 1, 2010 | Wells Fargo | 6615 132nd Ave. NE, Kirkland, Washington (Bridle Trails) |
| Sept. 16, 2010<br>Sept. 17, 2010<br>Sept. 19, 2010<br>Sept. 21, 2010 | Boeing Employee's Credit Union ("BECU") | 4250 NE 4th St., Renton, Washington |
| Sept. 23, 2010 | BECU | 13910 NE Mill Plaza, Woodinville, Washington |
| Sept. 25, 2010 to<br>Oct. 3, 2010 | Wells Fargo | 9750 NE 117th Ln., Kirkland, Washington (Juanita Village) |

TUDOR also participated in an attempt to place a skimming device on a BECU ATM located at 1405 E. Main St., Puyallup, Washington, on November 6, 2010. Through this and other skimming activity, TUDOR, and others, were able to covertly gather the account information and PINs of hundreds of unwitting ATM users executing legitimate transactions.

      c.     As part of the scheme, TUDOR, with others, manufactured counterfeit cards by re-encoding the customer information obtained through the aforementioned and other skimming activity onto alternative card stock. These counterfeit cards constitute counterfeit access devices, which in turn contain unauthorized access devices, as defined by Title 18, United States Code, Section 1029. TUDOR rented room #106 at the Extended Stay Motel in Renton, where he and others organized stolen personal identifying and financial information and manufactured such counterfeit cards using the devices found therein by law enforcement.

      d.     As part of the scheme, TUDOR then used counterfeit cards encoded with stolen customer data, along with stolen PINs, to falsely represent himself as actual account holders to make numerous unauthorized ATM cash withdrawals and point-of-sale purchases throughout the Seattle/Bellevue area. In doing so, TUDOR, through use of the national banking channels and communications by wire affecting interstate commerce, accessed and caused to be withdrawn or transmitted monies and funds from the accounts of real persons in the custody, care, and control of financial institutions, all without legal authority and without the knowledge and permission of the actual account holders. As part of the scheme and artifice to defraud, TUDOR executed the following representative fraudulent transactions:

      (1)     On October 11, 2010, TUDOR knowingly possessed and used, without permission or legal authority, the PIN and a counterfeit access device encoded with financial information relating to account no. xxxx-xxxx-xxxx-5462, a BECU account belonging to account holder T.B., a real person, to obtain $1,000 in cash from a BECU ATM located in Redmond, Washington. TUDOR

PLEA AGREEMENT/TUDOR
Case No. CR11-27 RAJ - 9

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

obtained T.B.'s personal identifying and financial information through the skim of the BECU ATM located in Renton, mentioned above.

(2) On October 12, 2010, TUDOR knowingly possessed and used, without permission or legal authority, the PIN and a counterfeit access device encoded with financial information relating to account no. account no. xxxx-xxxx-xxxx-8791, a BECU account belonging to account holder W.L., a real person, to attempt to obtain $1,000 in cash from a BECU ATM located in Seattle, Washington. TUDOR obtained W.L.'s personal identifying and financial information through the skim of the BECU ATM located in Renton, mentioned above.

(3) On October 17, 2010, TUDOR knowingly possessed and used, without permission or legal authority, the PIN and a counterfeit access device encoded with financial information relating to account no. xxxx-xxxx-xxxx-3644, a Wells Fargo account belonging to account holder W.K., a real person, to access $700.79 to purchase jewelry from a JCPenney store located in Seattle, Washington. TUDOR obtained W.K.'s personal identifying and financial information through the skim of the Wells Fargo ATM located in Kirkland (Juanita Village), mentioned above.

e. Through the aforementioned scheme and artifice to defraud, CLAUDIU TUDOR, by falsely representing himself as actual account holders, has accessed funds in the accounts of more than 50 different individual victims, held at federally insured financial institutions, including, but not limited to, BECU, Wells Fargo, Union Bank, and Key Bank. In total, this conspiracy and scheme and artifice to defraud has resulted in an actual loss that well exceeds $230,625.35. No amounts have been repaid.

14. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees to move to dismiss the remaining counts in the Indictment at the time of sentencing and not to prosecute Defendant for any additional offenses known to it as of the time of this Agreement that are based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

15. **Acceptance of Responsibility.** The United States acknowledges that if Defendant qualifies for an acceptance of responsibility adjustment pursuant to USSG § 3E1.1(a), and if the offense

PLEA AGREEMENT/TUDOR
Case No. CR11-27 RAJ - 10

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

level is sixteen (16) or greater, his total offense level should be decreased by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because he has assisted the United States by timely notifying the authorities of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

16. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges in the Indictment that were previously dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Agreement, Defendant should engage in illegal conduct, or conduct that is in violation of his conditions of release or confinement (examples of which include, but are not limited to: obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the plea agreement.

17. **Waiver of Appeal.** As part of this Plea Agreement and on the condition that the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) that is determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

    a. any right conferred by Title 18, United States Code, Section 3742 to appeal the sentence, including any restitution order imposed; and

PLEA AGREEMENT/TUDOR
Case No. CR11-27 RAJ - 11

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

        b.      any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

Furthermore, this waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of his confinement or the decisions of the Bureau of Prisons regarding the execution of his sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

18. **Voluntariness of Plea.** Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily and that no threats or promises, other than the promises contained in this Plea Agreement, were made to induce Defendant to enter these pleas of guilty.

19. **Statute of Limitations.** In the event this Agreement is not accepted by the Court for any reason, or Defendant has breached any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

//
//
//
//
//
//
//

PLEA AGREEMENT/TUDOR
Case No. CR11-27 RAJ - 12

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

20. **Completeness of Agreement.** The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties. This Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 20 day of April, 2011.

CLAUDIU TUDOR
Defendant

JESSE CANTOR
Attorney for Defendant

TESSA M. GORMAN
Assistant United States Attorney

STEVEN T. MASADA
Assistant United States Attorney

PLEA AGREEMENT/TUDOR
Case No. CR11-27 RAJ - 13

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

INSTRUCTIONS FOR PAYING SPECIAL ASSESSMENTS PRIOR TO SENTENCING

1. Special Assessments paid prior to sentencing must be paid to the Clerk, United States District Court.

2. Special Assessments must be paid by a first party, certified, or cashiers check, or a money order. No second party checks will be accepted. No post-dated checks will be accepted.

3. All checks must be made out in U.S. dollars to "Clerk, U.S. District Court.

4. All checks or money orders must be accompanied by the attached form entitled, "Plea Agreement Special Assessment Payments." The entire form must be filled out or the Clerk, United States District Court, will not accept the payment.

PLEA AGREEMENT SPECIAL ASSESSMENT PAYMENT

DATE: _____

FROM: _____

TO:   CLERK, U.S. DISTRICT COURT
      ATTN: INTAKE TEAM

CASE NAME:   *United States v. Claudiu Tudor*

CASE DOCKET NUMBER:   CR11-27 RAJ

DEFENDANT'S NAME:   Claudiu Tudor

SINGLE OR MULTIPLE DEFENDANTS:   Multiple

TOTAL SPECIAL ASSESSMENT PER DEFENDANT AS SET FORTH IN THE PLEA AGREEMENT:   $300.00

PLEA AGREEMENT/TUDOR
Case No. CR11-27 RAJ - 14

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970